[No. 13166.  Department Two.  August 4, 1916.]

WESTERN DRY GOODS COMPANY, *Appellant*, v.
M. L. HAMILTON, *Respondent*.[1]

GUARANTY—CONTRACT—CONSTRUCTION—"PURCHASE OF GOODS"—OB-
LIGATIONS COVERED.  A continuing guaranty of goods to be sold to a
corporation, then in a failing or insolvent condition, is a guaranty
only of the purchase price of goods sold to the store under its own
management as a going concern, and not to secure the purchase price
of goods sold after its management had been placed under the con-
trol of creditors for the purpose of liquidation, a representative of
the creditors having control of the business and making dividends
to the creditors.

SAME—CONTRACT—CONSTRUCTION—PAST INDEBTEDNESS.  A continu-
ing guaranty of full payment of the account of K. Co., "whether now
due or hereafter to become due," given in consideration of "selling
goods upon credit to said K. Co.," excludes all other consideration,
and hence does not guarantee a past due indebtedness, where no
goods were sold to the company in reliance upon the guaranty;
especially where no indulgence was granted on the account and the
management of the business was taken over by the creditors and
others within three days after the making of the guaranty.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered October 27, 1915, upon find-
ings in favor of the defendant, in an action on contract, tried
to the court.  Affirmed.

*Wettrick, Anderson & Wettrick*, for appellant.

*Karr & Gregory*, for respondent.

PARKER, J.—The plaintiff, Western Dry Goods Company,
seeks recovery from the defendant M. L. Hamilton, upon a
guaranty contract, executed by him and Lester E. Hamil-
ton, reading as follows:

                              "Seattle, Wash., Feb. 3, 1911.
"Western Dry Goods Co., Inc.,
        "Seattle, Wash.
"Dear Sirs:
    "We hereby guarantee you full payment of the account
of Kegley's Bee Hive Store, Inc., of Georgetown, Wash.,

    [1] Reported in 159 Pac. 373.

whether now due or hereafter to become due and payable to you, limiting the extent of this guaranty however to $2,000.

"This guaranty is given in consideration of your selling goods upon credit to the said Kegley's Bee Hive Store, Inc., of Georgetown, Wash., it being understood that the terms of credit on the account hereby guaranteed are two per cent 60 days or net 90 days.

"It is further agreed that this is a continuing guaranty to remain in force until revoked in writing by the undersigned guarantors.

"This guaranty is absolute as to any balance or balances due you on said account before such revocation.

"It is also agreed that no extension of time of [or] other indulgence by you on said account shall release, discharge or change the obligation of this guaranty.

"(Signed)    Lester E. Hamilton,
"M. L. Hamilton."

This action was commenced in the superior court against both guarantors. The defendant Lester E. Hamilton was adjudged to be in default, but the record before us does not show that any judgment was ever rendered thereon against him. However, the trial proceeded against the defendant M. L. Hamilton, resulting in findings and judgment in his favor, from which the plaintiff has appealed.

Appellant is a corporation engaged in the wholesale dry goods business in Seattle. Kegley's Bee Hive Store, hereinafter referred to as the store, is a corporation and, at the time of the execution of the guaranty here involved, was engaged in the general merchandise business at Georgetown, a suburb of Seattle. At that time, the defendant Lester E. Hamilton was the manager of its business, and respondent, M. L. Hamilton, was the owner of the building in which it carried on its business as his tenant. At that time, it was indebted to appellant in the sum of $862 which, with sums owing to other creditors, rendered its affairs in a somewhat critical condition. While possibly not then wholly insolvent, it would have been rendered immediately insolvent had appellant and its other creditors forced payment of the indebted-

ness due from it to them. It was then apparently unable to purchase goods on credit in the usual course of business.

On February 6, 1911, three days after the execution of this guaranty contract and before the sale of any additional goods by appellant to the store, there was held in Seattle a meeting of its creditors to consider its affairs and the possibility of its being able to continue in business. The result of this meeting, at which appellant was represented by its vice-president, was that an agreement was reached, between all of the creditors represented and the store, by which its business should be conducted for a time under the direction of a representative of the creditors with a view of the liquidation of its debts. There is some dispute as to the extent of the control over the business such representative should have and did exercise, but in any event it is clear that he was to, and thereafter did, control the business as to the general policy to be pursued, and especially as to the paying out of money. It was also agreed that a special sale should be immediately advertised and conducted with a view of reducing as much of the stock to cash as possible and paying the proceeds thereof *pro rata* to all the creditors, and that the purchase of goods necessary to render the stock saleable should be for cash as near as possible.

The creditors, including appellant, placed their several claims in the hands of the Seattle Merchants' Association, an association of wholesale merchants organized for the purpose of winding up the affairs of insolvent concerns without the expense and formalities of a receivership or bankruptcy proceeding, when consented to by all parties concerned. It was through this association and its representative in control of the store that the creditors, including appellant, were represented. Commencing at that time under this management, the conduct of the business resulted in dividends being paid to all the creditors, including appellant, through the Seattle Merchants' Association, in April, May, June, July, August and October, 1911. The evidence seems to indicate that this

management was, at the beginning, contemplated to exist for a period of thirty days, largely as an experiment to determine whether or not the store would be able to continue its business and the creditors could safely surrender their control thereof. This management, however, seems to have continued up to October 31, 1911, when the officers of the store executed an absolute bill of sale of its stock and fixtures to the Seattle Merchants' Association, in trust for all of its creditors; and thereafter the remainder of its property was reduced to cash, which was distributed through that association by the payment of dividends to the creditors.

After February 6, 1911, appellant sold goods to the store under this management. We think the evidence as a whole warrants the conclusion that the store was insolvent and unable to pay its debts in the usual course of business at all times following the making of its agreement with its creditors of February 6, 1911; and that it was then saved from passing into insolvency by formal legal proceedings by the action of its creditors in assuming control of its affairs. Appellant now claims $1,481 due it from respondent upon the guaranty contract executed February 3, 1911, for an unpaid balance for goods sold by appellant after February 6, 1911, and a balance due upon the indebtedness existing at the time of the execution of the guaranty contract. No demand was ever made by appellant upon respondent for any sum due upon the guaranty contract until November 15, 1913, over two years after the last goods were sold by appellant. The foregoing summary of facts, we think, is as fair to appellant as can be made from the record of the evidence before us. The trial court having made findings in substance as above summarized, concluded in part as follows:

"That such goods as were sold after February 6, 1911, and beginning February 10, 1911, were sold to the representatives of the creditors.

"That Kegley's Bee Hive Store was to all intents and purposes in the hands of a receiver from the 7th day of February, 1911, until its final dissolution.

"That the guaranty was not accepted or acted upon by plaintiff."

It is contended in appellant's behalf that the trial court erred in concluding that the goods sold by appellant after February 6, 1911, were in effect sold to the representatives of the creditors and not to the store under the management of its own officers in reliance upon the guaranty contract. This, in its final analysis, becomes a question of fact; that is, was the store, after February 6, 1911, under the control and management of its officers, or was it then under the control and management of representatives of its creditors? It is true that its manager, Lester E. Hamilton, continued to assist in the conduct of the business; but it is also true, we think, that he did not have control of the business and was not acting other than for the creditors, and that he was subject to the order and direction of the representatives of the creditors. Indeed, it seems plain that the creditors, including appellant, would not have permitted the business to continue after February 6, 1911, upon any other condition than that they should have control of it until such time as it might appear that they could safely surrender such control, which manifestly never arrived. In the light of these facts, it seems to us that the guaranty contract was never accepted or acted upon by appellant in so far as the sale of goods to the management of the store after February 6, 1911, is concerned, and that the guaranty contract will not bear the construction that it was intended as a guaranty for the purchase price of goods sold under such circumstances. Plainly, we think, it was only a guaranty of the purchase price of goods to be sold to the store under its own management as a going concern, and not to secure the purchase price of goods sold to its management under the control of its creditors in the course of liquidation. Appellant having sold the goods under these circumstances, we agree with the trial court that the guaranty contract never became effective

as security for the payment of goods sold by appellant after February 6, 1911.

Did the guaranty contract become binding and effective as such to secure payment of the $862 of indebtedness due from the store to appellant at the time of its execution? We think not. The consideration expressed in the contract is, "In consideration of your selling goods upon credit to the said Kegley's Bee Hive Store, Inc." It might well be argued that this excludes all thought of any other consideration which would render it of binding force so far as prior indebtedness is concerned, in the light of the facts we have above noticed, and our conclusion therefrom that no goods were sold by appellant in reliance upon the guaranty contract. It is insisted, however, that it was contemplated by the parties to the guaranty contract that indulgence should be granted to the store by the extension of time upon the past due indebtedness as part of the consideration for the guaranty. We may concede that there is some slight evidence tending to so show if we are to look beyond the terms of the written contract. But the fact remains that no such indulgence was granted; for, within three days following the making of the contract, appellant, joining with the other creditors, in effect caused the business of the store to be taken from the control of its officers and placed under the control of its creditors with a view of its management in their interest and the payment to them of dividends from its proceeds *pro rata* upon their several claims. This, being done with the consent of all concerned, was adopted by the creditors, including appellant, as a means of collecting their claims as effectual as legal proceedings could have been. Indeed, appellant's president by his own testimony renders it plain that he regarded this method of protecting its interest even more effectual than legal proceedings would have been looking to that end. In any view of the case, we think that the contract of guaranty did not become effectual as security for this past due indebtedness.

The facts of this controversy as to details are somewhat obscure and involved. We conclude, however, that the record calls for the conclusion that the goods sold by appellant after February 6, 1911, were in effect sold to the representatives of the creditors while the store was under their control in course of liquidation, and that no indulgence in the way of extension of time was granted by appellant touching the indebtedness due at the time of the execution of the guaranty contract. Having so concluded upon these questions of fact, we think it requires no citation of authority to demonstrate that the law calls for an affirmance of the judgment.

The judgment is affirmed.

FULLERTON, MOUNT, and HOLCOMB, JJ., concur.

MORRIS, C. J., took no part.